SO ORDERED.

SIGNED this 11th day of June, 2025.



_____
Mitchell L. Herren
United States Bankruptcy Judge

**DESIGNATED FOR ONLINE PUBLICATION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE:<br><br>CHAD ERIC SMITH,<br><br>                      Debtor. | Case No. 24-10822<br>Chapter 7 |
| SARAH A. KEASLER and<br>DAVID J KEASLER,<br>                      Plaintiffs,<br><br>vs.<br><br>CHAD ERIC SMITH,<br>                      Defendant. | Adv. No. 24-5016 |

**Memorandum Opinion and Order Granting in Part and Denying in Part
Plaintiffs' Motion for Summary Judgment**

Plaintiffs Sarah and David Keasler, creditors of Debtor and pro se Defendant

Chad Smith, seek a determination $314,693.14 is owed to them by Smith and the

debt is nondischargeable in Smith's bankruptcy under the exceptions to discharge found in 11 U.S.C. § 523(a)(2)(A) (money obtained by "false pretenses, a false representation, or actual fraud") and § 523(a)(6) ("willful and malicious injury by the debtor to another entity or to the property of another entity").[1] Smith did not respond to Plaintiffs' motion for summary judgment.

For the reasons discussed below, the Court grants in part and denies in part Plaintiffs' motion.[2] Plaintiffs' have carried their burden of proof to show they are entitled to a judgment of nondischargeability under § 523(a)(2)(A), but not under § 523(a)(6). Plaintiffs are also entitled to summary judgment on their claims of fraud and unjust enrichment.

**I.    Undisputed Material Facts**

In July 2023, Plaintiffs purchased real property with two separate living quarters: a home in which Plaintiffs intended to reside and a smaller home adjoining the property's garage into which Mr. Keasler's elderly parents intended to reside. Before purchasing the property, Plaintiffs sought quotes from licensed contractors for repairs and renovations.

Smith told Plaintiffs he was a licensed contractor, and on July 20, 2023, he submitted a written estimate of $417,500 to conduct the repairs and renovations for the property. Smith's bid included a payment schedule. Around the same time,

---

[1] All statutory references are to Title 11 of the United States Code (the Bankruptcy Code) unless otherwise indicated. Plaintiffs appear by Jeremy E. Koehler of Foulston Siefkin LLP. Smith is proceeding pro se in this adversary proceeding.
[2] Doc. 24.

2

Smith told Plaintiffs they were required to issue a payment of $40,000 for the acquisition of permits to begin the project.

Smith did not apply for, obtain, or file a permit for construction on Plaintiffs' property. Smith instead asked a licensed contractor who had no connection with the project to pull a permit.

Based on Smith's representations he was a licensed contractor, would acquire permits, and could complete the project, Plaintiffs issued the following payments to Smith pursuant to the original estimate: $40,000 on July 25, 2023, $155,950 on September 21, 2023, $33,213.57 on November 11, 2023, and $33,213.57 on February 2, 2024.[3]

More payments beyond the original estimate were requested. In January 2024, Smith told Plaintiffs he had purchased large accordion glass doors for the property for $17,000, and on March 22, 2024, Smith told Plaintiffs he needed an additional payment of $28,242 for the cost of windows, extra material and labor, and beams and floor joists. Based on Smith's representations, Plaintiffs paid Smith $28,242 on March 26, 2024. Two days later, on March 28, 2024, Smith told Plaintiffs an additional payment of $7574 was required for the cost of additional windows, and the next day told Plaintiffs he purchased those additional windows. Based on Smith's representations, Plaintiffs paid Smith $7574 on April 4, 2024. The next

---

[3] Plaintiffs filed a claim in Smith's case for $314,693.14 based on the amount Smith "fraudulently induced" Plaintiffs to pay him. Case No. 24-10822, Proof of Claim No. 16-1 p. 2. The Proof of Claim is supported in part by copies of the checks Plaintiffs wrote: sometimes to "C.S. Renovations" and sometimes to "Chad Smith." The checks are all endorsed by Chad Smith. Per Smith's Statement of Financial Affairs supporting his Chapter 7 petition, Smith was doing business as "CS Renovations" from July 2023 to June 2024. *Id.*, Doc. 1 p. 72.

3

month, in May 2024, Smith said an additional payment of $16,500 was necessary for laying exterior foundation. Based on that representation, Plaintiffs paid Smith $16,500 on May 3, 2024.

In total, Smith collected $314,693.14 in payments from Plaintiffs. Plaintiffs would not have provided the $314,693.14 to Smith if not for Smith's false representations upon which they relied. Smith is not a licensed contractor. Smith did not pull a permit for the project. Smith did not order or pay for windows for the property.[4]

## II. Procedural History

On August 26, 2024, Smith filed his Chapter 7 bankruptcy petition, listing "Austin Construction," "Reliable Remodels," and "Chad Smith Renovations," as business names used in the prior eight years.[5] Plaintiffs were listed on Smith's Schedule E/F (nonpriority unsecured claims) with a total claim of $200,000 for an "unfinished contract."[6]

On October 8, 2024, Plaintiffs filed their adversary complaint, stating four claims: (1) nondischargeability under § 523(a)(2), (2) nondischargeability under § 523(a)(6), (3) fraud, and (4) unjust enrichment. Smith is proceeding pro se in this adversary proceeding and filed his answer to Plaintiffs' complaint on November 22, 2024.

---

[4] In the end, Smith conducted only a fraction of the project for which he was paid, but the work was performed so poorly it caused the need for costly corrections. The value of the work completed by Smith was $25,000, but the cost of repairs to his work was $33,000.
[5] Case No. 24-10822, Doc. 1 p. 1. Smith also disclosed a 100% interest in "Chad E Smith LLC" and a 50% interest in "Reliable Remodels of Kansas LLC." *Id.* p. 12.
[6] *Id.* p. 30. Smith checked the box indicating the debt to Plaintiffs was incurred by himself "and another," and on Schedule H listed the codebtor as "CS Renovations." *Id.* p. 49.

4

The parties submitted a joint report of parties planning conference on January 9, 2025,[7] which was adopted. But then on February 7, 2025, Plaintiffs filed a motion asking the Court to deem requests for admission they had served on Smith to be admitted, indicating Smith had not responded to those requests issued under Federal Rule of Civil Procedure 36[8] within the deadline to do so. The Court denied the motion since unanswered requests for admission "meeting the criteria of Rule 36(a)(1) are deemed admitted as a matter of law."[9]

Plaintiffs then filed the motion for summary judgment that is now under consideration. Plaintiffs also filed a "Notice of Service of Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," in accordance with Local Rules. Smith did not file a response to Plaintiffs' motion.

### III. Analysis

#### A. Jurisdiction, Venue, and Burden of Proof

The Court has jurisdiction over this core proceeding arising under title 11,[10] and venue is proper.[11] Exceptions to discharge are to be narrowly construed,[12] with doubt being resolved in the debtor's favor.[13] The creditor seeking to except a debt

---

[7] Doc. 18.
[8] Fed. R. Civ. P. 36 is applicable in adversary proceedings via Fed. R. Bankr. P. 7036.
[9] Doc. 22 p. 2.
[10] 28 U.S.C. §§ 1334(b), 157(b)(1) (granting authority to bankruptcy judges to hear core proceedings), (b)(2)(I) ("determinations as to the dischargeability of particular debts" are core proceedings).
[11] 28 U.S.C. 1409.
[12] *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).
[13] Bankruptcy's central purpose is to provide the honest debtor with a fresh start. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). It is because of this principle that the exceptions to discharge should be narrowly construed. *DSC Nat'l Props., LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 168 (10th Cir. BAP 2012).

5

from discharge bears the burden of proving each element of its claim by a preponderance of the evidence.[14]

### B. Standard for Summary Judgment

Summary judgment is appropriate where the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.[15] In ruling on a motion for summary judgment, the court must draw all reasonable inferences from the record in favor of the non-moving party.[16] Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[17]

When assessing a motion for summary judgment, the movant bears the burden to demonstrate there is no genuine dispute as to material facts,[18] and also has the burden to prove entitlement to judgment as a matter of law.[19] The non-moving party can avoid summary judgment if it identifies specific evidence that demonstrates there is a genuine dispute of material fact for trial, or if the

---

[14] *Grogan*, 498 U.S. at 287-88.
[15] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Rule 56 applies to this adversary proceeding via Fed. R. Bankr. P. 7056.
[16] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
[18] *Id.* at 330. A genuine dispute of material fact exists if, based on the evidence, a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[19] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 322–23).

6

undisputed facts do not establish a sufficient legal basis to grant the movant judgment as a matter of law.[20]

Here, Smith did not respond to Plaintiffs' motion for summary judgment, which is supported by an affidavit from Ms. Keasler. Because Smith did not respond to those properly supported facts, the court is permitted by Rule 56 to "consider the fact[s] undisputed for purposes of the motion"[21] and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.[22] This same result is required by District of Kansas Local Bankruptcy Rule 7056.1. Rule 7056.1(a) states the "court will deem admitted for the purpose of summary judgment, all material facts contained in the statement of the movant unless the statement of the opposing party specifically controverts those facts." Smith's pro se status does not relieve him of his responsibility to follow these procedural requirements.[23]

---

[20] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law." (emphasis added)). *See also Assessment Tech. Institute, LLC v. Parkes*, 588 F. Supp. 3d 1178, 1189 (D. Kan. 2022) ("To prevail on a motion for summary judgment on a claim upon which the moving party also bears the burden of proof at trial, the moving party must demonstrate no reasonable trier of fact could find other than for the moving party." (internal quotation omitted)); *In re QuVis, Inc.*, 446 B.R. 490, 493-94 (Bankr. D. Kan. 2011) (noting even if there are no disputed material facts, movant has burden to show those facts entitle movant to judgment as a matter of law).

[21] Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion.").

[22] Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it.").

[23] *See, e.g., Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 540 (10th Cir. 2005) ("Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (internal quotations and alterations omitted)).

7

Only the properly supported *facts*–outlined above in this Court's "Undisputed Material Facts"—are deemed admitted by the Court, however; not the conclusions of law proffered by Plaintiffs.[24] For example, Plaintiffs' Statement of Uncontroverted Fact No. 26 states: "Smith made the representation [he was a licensed contractor] with intent to deceive the Keaslers and/or with reckless disregard for the truth." That Smith misrepresented his status as a licensed contractor is a fact; whether the misrepresentation was made with the intent to deceive is or with reckless disregard for the truth are conclusions of law Plaintiffs hope the Court draws from that and other facts. This conclusion of law, and others like it, see Statements of Uncontroverted Fact No. 25 through 36, are supported by Plaintiffs' Requests for Admission that were not responded to.

As Plaintiffs point out, a request for admission is deemed admitted under Fed. R. Civ. P. 36(a)(3) if a timely response is not served. But requests for admission are proper only as to "(A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents," per Fed. R. Civ. P.

---

[24] *Cf. Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1219 (10th Cir. 2011) (an allegation not supported by factual content but "merely a conclusion of law" is not deemed admitted in light of motion to dismiss pleading standards); *Poulin Ventures, LLC v. MoneyBunny Co.*, No. 1:19-cv-01031-JCH-GBWA, 2022 WL 326286, at *4 (D.N.M. Feb. 3, 2022) (a "defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact," but "is not held to admit facts that are not well-pleaded or to admit conclusions of law" (internal quotations omitted)); *Rancho Del Oso Pardo, Inc. v. New Mex. Dep't of Game & Fish*, 508 F. Supp. 3d 867, 877 (D.N.M. 2020) (on a motion to dismiss, court is not required to accept as true conclusions of law or "legal conclusions that are masquerading as factual allegations").

The Court also orders the material facts listed in Plaintiffs' statement of uncontroverted facts, paragraphs numbered 1 through 24, 37, and 38, as established for purposes of this case. See Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case."). Because the additional assertions in Plaintiffs' motion are not statements of fact, but rather are conclusions of law, the Court does not so order as to those additional paragraphs.

8

36(a)(1). For this reason, the requests for admission that asked for admission of pure conclusions of law and not the application of law to fact are not permitted.[25] Admittedly, the line between pure conclusions of law and "the application of law to fact" is murky. Because of the Court's conclusions below that the responded-to "pure" facts are sufficient to find nondischargeability under § 523(a)(3), but are insufficient to find nondischargeability under § 523(a)(6), it need not further stake out a position on the issue.

Because of the foregoing, the statements of fact contained within Plaintiffs' motion are deemed admitted.[26] Summary judgment in favor of Plaintiffs is therefore appropriate *if* those material facts demonstrate Plaintiffs are entitled to judgment as a matter of law.

### C. Nondischargeability under § 523(a)(2)(A)

Subsection 523(a)(2)(A) of title 11 provides as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt– –
. . .
    (2) for money, property, services . . . to the extent obtained by– –
        (A) false pretenses, a false representation, or actual fraud[.]

Under this subsection, as noted briefly above, the analysis begins "with the recognition that exceptions to discharge are narrowly construed, and because of the

---

[25] *See, e.g.*, *Thompson v. Beasley*, 309 F.R.D. 236, 240-42 (N.D. Miss. 2015) (assessing motion for summary judgment relying on requests for admission that were not responded to and concluding "for a legally-related request to be deemed admitted in this case, it must connect the relevant legal proposition to specific facts and circumstances of the case").

[26] *See* D. Kan. LBR 7056.1(a); Fed. R. Civ. P. 56(e)(2). *See also Reed v. Nellcor Puritan Bennett*, 244 F. Supp. 2d 1205, 1208 (D. Kan. 2003) (accepting "as true all material facts asserted" with proper support where nonmoving party failed to respond to a motion for summary judgment).

**9**

fresh start objectives of bankruptcy, doubt as to the meaning and breadth of a statutory exception is to be resolved in the debtor's favor."[27]

To except debt from discharge based on a false representation,[28] a creditor must prove the following factors by a preponderance of the evidence: (1) the debtor made a false representation; (2) the debtor made the representation with the intent to defraud; (3) the creditor relied on the representation; (4) the creditor's reliance was justifiable; and (5) the debtor's representation caused the creditor to sustain a loss.[29]

Here, the uncontroverted facts show Plaintiffs have established nondischargeability under § 523(a)(2)(A) by a preponderance of the evidence. Regarding the first element (the debtor made a false representation), the uncontroverted facts are that Smith made false representations about his status as a licensed contractor, false representations about pulling permits for his work on Plaintiffs' property, and false representations about his purchase of materials (windows and other supplies) for the property. All these qualify as "express misrepresentations."[30]

---

[27] *DSC Nat'l Properties, LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 168 (10th Cir. BAP 2012) (internal quotations and alterations omitted).

[28] Plaintiffs also contend Smith's actions constitute actual fraud under § 523(a)(2)(A). *See* Doc. 24 p. 8 ("Smith obtained $314,693.14 from the Keaslers based on both false representations and actual fraud."); *Husky Int'l Electronics, Inc. v. Ritz*, 578 U.S. 355, 360 (2016) (actual fraud "connotes deception or trickery" that is "done with wrongful intent"); *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 690 (10th Cir. BAP 2013) (actual fraud occurs if "a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right" (internal quotations omitted)). Because the Court finds the debt was incurred by false representations, it need not also consider actual fraud.

[29] *In re Johnson*, 477 B.R. at 169.

[30] *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 223 (10th Cir. BAP 2013) (contrasting "false representations" under § 523(a)(2)(A) with "false pretenses," and calling false representations "express misrepresentations"). To contrast, the facts herein are not like those in *Ford v. Frey (In re*

**10**

The second element (whether the debtor made the false representations with the intent to defraud) assesses the debtor's subjective intent,[31] which may be inferred from the totality of circumstances, or "from a knowingly made false statement."[32] Based on the uncontroverted facts, the totality of the circumstances show Smith made his false representations with the intent to deceive Plaintiffs. The false representations were knowingly-made false statements; the Court has nothing in front of it to show they were mistakenly made or an innocent mix-up. Smith said he was licensed, said he was pulling permits, and said he needed payment for the purchase of specific items—but none of it was true. Smith was a "willing participant" in the endeavor, he knew Plaintiffs were renovating their home based on his bid, knew the payments on the bid were based on his work product, and knew he was representing himself as the skilled contractor.[33] The totality of the circumstances

---

*Frey)*, 652 B.R. 688 (Bankr. D. Kan. 2023). In *Frey*, the creditor alleged nondischargeability under § 523(a)(2)(A) based on the contractor's false representation he would complete specified work in a required timeframe. *Id.* at 694. Not only did the creditor not prove there was a contracted-for deadline, but even if there was one, as the bankruptcy court noted, a breach of contract, standing alone, cannot establish a misrepresentation under § 523(a)(2)(A). *Id.* at 695.

[31] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1375 (10th Cir. 1996). "Recognizing that the debtor will rarely admit to fraudulent knowledge or intent, the bankruptcy court must consider whether the totality of the circumstances presents a picture of deceptive conduct by the debtor which indicates intent to deceive the creditor." *Collins v. Leonard (In re Leonard)*, No. 18-12476-JDL, 2019 WL 1062484, at *6 (Bankr. W.D. Okla. Mar. 6, 2019) (internal quotations omitted).

[32] *In re Young*, 91 F.3d at 1375 ("The second element of § 523(a)(2)(A), the debtor's intent to deceive the creditor in making false representations to the creditor, may be inferred from the totality of the circumstances, or from a knowingly made false statement." (internal quotations and citations omitted)).

[33] *See In re Sturgeon*, 496 B.R. at 224 (stating "[f]raudulent intent for purposes of Section 523(a)(2)(A) can be shown by establishing that the debtor was a willing participant in a fraudulent scheme and thereby intended to deceive a creditor" and affirming bankruptcy court's finding of intent to defraud based on the court's finding the debtor "was an active, knowing participant in a fraudulent scheme to deceive the [creditor] through a series of false representations and false pretenses that created a contrived and misleading understanding by the [creditor]").

11

shows knowingly-made false statements and the intent to defraud.[34]

Third, the uncontroverted facts show Plaintiffs relied on the false representations made to them by Smith. Plaintiffs hired Smith to do the work needed on their property and specifically state in their affidavit they issued payments based on Smith's statements he was a licensed contractor and pulled permits. Plaintiffs paid the agreed upon rate from their contract with Smith. Plaintiffs made additional payments at Smith's request based on his false representations he purchased additional needed materials, in the amounts and within days of those requests. Plaintiffs' affidavit testifies to their reliance.

In addition, regarding the fourth factor, Plaintiffs' reliance on Smith's false representations was justifiable. Whether a creditor's reliance is justifiable is measured "from a subjective standpoint."[35] To determine whether reliance is justifiable, a court should "examine the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case."[36] "Reliance is not justifiable if the facts and circumstances make it apparent from a cursory glance that the representations are false, or where the creditor 'has discovered something

---

[34] *In re Young*, 91 F.3d at 1375 (totality of circumstances); *see also, e.g., Bartley v. Jacobson (In re Jacobson)*, 485 B.R. 255, 261-62 (Bankr. D. Kan. 2013) (submitting knowingly false invoices on construction project shows intent to defraud under § 523(a)(2)(A)); *Crossingham Trust v. Baines (In re Baines)*, 337 B.R. 392, 400–01 (Bankr. D.N.M. 2006) (false representation made through false invoices shows requisite intent to defraud under § 523(a)(2)(A)).

[35] *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 791 (10th Cir. 2009). "To prove justifiable reliance, a creditor need not show that it acted consistent with ordinary prudence and care. Instead, to determine whether a creditor's actual reliance was justifiable, the Court applies a subjective standard that takes into account the qualities and characteristics of the particular creditor, not a community standard of conduct applicable to all cases." *Grange Ins. Assoc. v. Woods (In re Woods)*, 660 B.R. 905, 921 (10th Cir. BAP 2024).

[36] *In re Riebesell*, 586 F.3d at 792. *See also In re Woods*, 660 B.R. at 921 ("to determine whether a creditor's actual reliance was justifiable, the Court applies a subjective standard that takes into account the qualities and characteristics of the particular creditor").

**12**

which should serve as a warning that he is being deceived.'"[37] As the Tenth Circuit Bankruptcy Appellate Panel (BAP) recently noted, justifiable reliance on a false representation requires a creditor to make an investigation only if:

> (1) (a) the creditor discovers a "red flag" (which is a warning sign that calls into question the veracity of the representation) or the creditor otherwise is, in fact, suspicious of a deception, or (b) under the circumstances, a red flag should have been obvious to the creditor, taking into account the creditor's knowledge and sophistication, so that the creditor should have been suspicious of a deception; and (2) the red flag or other suspicion indicates that reliance is unwarranted without further investigation.[38]

Here, the record shows no reason Plaintiffs should have questioned Smith's representations about his license or permits, or his statements about progress on their project and his need for money to purchase materials. Smith was supposedly the professional; Plaintiffs were laypeople. Plaintiffs had no reason to suspect Smith was lying to them.[39] There were no red flags for Plaintiffs to investigate, and Plaintiffs' reliance was justifiable.

Finally, Smith's false representations caused Plaintiffs to sustain losses. Based on Smith's representations he was a licensed contractor and would acquire permits, Plaintiffs wrote checks to Smith totaling $262,377.14.[40] Based on Smith's false representations about additional needed construction materials, Plaintiffs

---

[37] *Penix v. Parra (In re Parra)*, 483 B.R. 752, 769 (Bankr. D.N.M. 2012) (quoting *Field v. Mans*, 516 U.S. 59, 71 (1995)).
[38] *In re Woods*, 660 B.R. at 922 (internal citations omitted).
[39] *Mid-States Millwork, Inc. v. Gering (In re Gering)*, 69 B.R. 686, 693 (Bankr. D. Kan. 1987) (relying on false invoices submitted by defendant was reasonable under the reliance standard of § 523(a)(2)(A)).
[40] As noted above, Plaintiffs issued the following payments to Smith pursuant to the original estimate: $40,000 on July 25, 2023, $155,950 on September 21, 2023, $33,213.57 on November 11, 2023, and $33,213.57 on February 2, 2024.

**13**

wrote additional checks to Smith totaling $52,316.⁴¹ In total, Smith's false representations caused losses to Plaintiffs totaling $314,693.14.⁴²

Plaintiffs have carried their burden under § 523(a)(2)(A) to except from discharge the $314,693.14 as money obtained by false representations. The motion for summary judgment as to the nondischargeability of that $314,693.14 is granted.

### D. Nondischargeability under § 523(a)(6)

Subsection 523(a)(6) of title 11, an additional alleged basis for Plaintiffs' dischargeability claim, provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt– –
> . . .
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

The Supreme Court has concluded that this subsection encompasses "only acts done with the actual intent to cause injury."⁴³ The injury must be both willful and malicious.⁴⁴

---

⁴¹ Again, as noted above, Plaintiffs issued the following payments to Smith pursuant to his verbal misrepresentations about materials: $28,242 on March 26, 2024, $7574 on April 4, 2024, $16,500 on May 3, 2024,

⁴² Section 523(a)(2)(A) excepts from discharge "any debt" for money obtained by a false representation. "For purposes of § 523(a)(2)(A), 'debt' means liability on an enforceable obligation. Whether a debt exists is determined by looking to applicable law, frequently state law. *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 8 (10th Cir. BAP 2016). Plaintiffs use Kansas state law governing claims of fraud and unjust enrichment, discussed below, to establish Smith's liability on an enforceable obligation. This Court therefore addresses the two-step process for finding debts nondischargeable in reverse order. *See Glencove Holdings, LLC v. Bloom (In re Bloom)*, 634 B.R. 559, 579 (10th Cir. BAP 2021) ("Determining whether a debt is nondischargeable under § 523(a) is a two-step process. First, the creditor must show that it has an enforceable claim against the debtor under applicable nonbankruptcy law. If that showing is made, then the creditor must show that the debtor's debt for that claim is nondischargeable under § 523(a).").

⁴³ *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

⁴⁴ *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 911 (10th Cir. BAP 2020) ("This Court concludes that proof of a 'willful and malicious injury' under § 523(a)(6) requires proof of two distinct elements — the injury must be both 'willful' and 'malicious.' Analyzing and applying 'willful' and 'malicious' separately is the better approach.").

14

Under § 523(a)(6), a debtor "must intend the consequences of his actions, not just the actions themselves."[45] Plaintiffs, as the creditors pursuing nondischargeability, have the burden of proof under § 523(a)(6).[46] Plaintiffs allege their injury—their loss of $314,693.14—meets the standards for nondischargeability under § 523(a)(6) because Plaintiffs provided Smith with funds "he never intended to use on the Project."[47] Plaintiffs allege Smith's actions were wrongful, because Smith made multiple false representations for the purpose of taking their money, and without providing value.

The Court concludes more is required to prove a claim of nondischargeability under § 523(a)(6). An injury is willful when there is "a deliberate or intentional injury, not merely 'a deliberate or intentional act that leads to injury.'"[48] A willful injury can either be established by "direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or by indirect evidence

---

[45] *Melquiades v. Hill (In re Hill)*, 390 B.R. 407, 411 (10th Cir. BAP 2008).
[46] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).
[47] Doc. 24 p. 9. It is not clear to the Court if § 523(a)(6) applies to the facts at hand. In general, a breach of contract cannot support a claim under § 523(a)(6); it is for tort-based claims. *Rael v. Gonzales (In re Gonzales)*, 667 B.R. 357, 372 (Bankr. D.N.M. 2025) ("Ordinarily, breach of contract, even an intentional breach of contract, will not establish a non-dischargeability claim under § 523(a)(6)" but if an intentional breach of contract is accompanied by a tort claim like an intentional conversion of another's property, then a § 523(a)(6) claim may arise). Conversion of property *can* constitute the basis for a nondischargeability claim under § 523(a)(6). *See Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999) (noting that "conversion can, under certain circumstances, give rise to a non-dischargeable debt pursuant to § 523(a)(6)"). But once Plaintiffs paid Smith, the funds were no longer their property and there is no injury to their property. *E.g.*, *Collins v. Leonard (In re Leonard)*, No. 18-12476-JDL, Adv. No. 18-01081-JDL, 2019 WL 1062484, at *6-7 (Bankr. W.D. Okla. 2019) (discussing cases noting that paying funds to a contractor transfers the property to that contractor, and therefore there is no property interest converted by the debtor that could give rise to a nondischargeability action under § 523(a)(6)). Smith did not file a response and raise this issue, and regardless, the Court concludes the uncontroverted facts in the record at this stage do not establish nondischargeability under § 523(a)(6).
[48] *In re Smith*, 618 B.R. at 912 (quoting *Kawaauhau*, 523 U.S. at 57).

**15**

that the debtor desired to cause the injury or believed the injury was substantially certain to occur. This is a subjective standard."[49] Here, there are insufficient facts to support a conclusion of willfulness because there are no undisputed facts concerning Smith's intent to harm.[50]

An injury is malicious if the debtor's actions are wrongful.[51] As the Tenth Circuit BAP noted:

> For an injury to be "malicious," evidence of the debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' in addition to 'willfulness' is present. All the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind vis-a-vis the actual injury caused the creditor. A willful and malicious injury requires more than negligence or recklessness.[52]

The "totality of circumstances must be examined to determine if a wrongful state of mind was present" when the debtor caused the alleged injury to the creditor.[53] There are also insufficient undisputed facts supporting maliciousness. Although there are facts supporting false representations and an intent to deceive, which is

---

[49] *Id.* (internal citations omitted).
[50] *See Kawaauhau*, 523 U.S. at 62 (discussing willfulness element of § 523(a)(6) and noting a "knowing breach of contract," without more, is insufficient); *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1128 (10th Cir. 2004) ("§ 523(a)(6) pertains to only acts done with the actual intent to cause injury, and non-dischargeability takes a deliberate or intentional injury not merely . . . a deliberate or intentional act that leads to injury"); *Penix v. Parra (In re Parra)*, 483 B.R. 752, 772 (Bankr. D.N.M. 2012) (noting that while conversion of a creditor's property interest could constitute the basis for a nondischargeability claim under § 523(a)(6), there must be a willful and malicious injury flowing from that act of conversion to be actionable under § 523(a)(6)).
[51] *In re Smith*, 618 B.R. at 919.
[52] *Id.* (internal citations and quotations omitted).
[53] *Id.* at 920.

**16**

sufficient to find nondischargeability under § 523(a)(2)(A), maliciousness under § 523(a)(6) requires something different.[54]

Plaintiffs' motion for summary judgment on their claim under § 523(a)(6) is denied.

### E. Fraud and Unjust Enrichment

Plaintiffs also ask this Court to enter a money judgment for them on their claims for fraud and unjust enrichment. The Tenth Circuit has concluded bankruptcy courts have jurisdiction to not only declare a debt nondischargeable, but also "liquidate the debt and enter a monetary judgment against the debtor."[55] Plaintiffs seek this additional relief.

First, to state a claim for fraud under Kansas law,[56] Plaintiffs must show: "[1] an untrue statement of fact, [2] known to be untrue by the party making it, [3] made with the intent to deceive or with reckless disregard for the truth, [4] upon which another party justifiably relies and [5] acts to his or her detriment."[57] For the same reasons stated in analyzing Plaintiffs' claim under § 523(a)(2)(A),[58] the Court

---

[54] *See Glencove Holdings, LLC v. Bloom (In re Bloom)*, 622 B.R. 366, 438 (Bankr. D. Colo. 2020) (finding malicious injury where the debtor committed wrongful conduct, without just cause or excuse, by cheating his client in "an act of moral turpitude and malice," knowingly and consciously violating his fiduciary duties and industry standards, and repeatedly lying to make more money).
[55] *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 793 (10th Cir. 2009) ("The question is whether a bankruptcy court, in addition to declaring a debt non-dischargeable, has jurisdiction to liquidate the debt and enter a monetary judgment against the debtor." (internal quotations omitted)). *See also RTC v. McKendry (In re McKendry)*, 40 F.3d 331, 336 (10th Cir.1994) ("In bankruptcy court there are two separate and distinct causes of action[.] One cause of action is on the debt and the other cause of action is on the dischargeability of that debt." (quotation omitted)).
[56] State law controls to establish a claim. *Grogan v. Garner*, 498 U.S. 279, 283–84 (1991).
[57] *Bomhoff v. Nelnet Loan Servs., Inc.*, 279 Kan. 415, 422, 109 P.3d 1241, 1246 (2005) (internal quotations omitted).
[58] *Cf. Johnson v. Creason (In re Creason)*, No. 2210116, Adv. No. 22-5017, 2023 WL 6851445, at *9 (Bankr. D. Kan. Oct. 16, 2023) (comparing the elements of fraud under Kansas law with the elements for nondischargeability under § 523(a)(2)(A) and concluding a state law determination of

**17**

concludes Plaintiffs have established fraud under Kansas law. Smith made multiple untrue statements of fact: concerning his status as a licensed contractor, his pulling of a permit to do the work on Plaintiffs' property, and regarding his purchase of materials for the project. The totality of the circumstances indicates Smith intended to deceive with his actions: Smith knew his statements were false, but took the money from Plaintiffs anyway, regardless of that knowledge. Plaintiffs justifiably relied on Smith's false statements and were damaged in the amount of $314,693.14 as a result. All elements of fraud under Kansas state law have been established, and Plaintiffs are entitled to summary judgment on this claim.

Second, to state a claim for unjust enrichment under Kansas law, Plaintiffs must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value."[59] Likewise, the conclusions made above regarding Plaintiffs' nondischargeability claim under § 523(a)(2)(A) support a conclusion of unjust enrichment here. Plaintiffs conferred a benefit on Smith by paying him $314,693.14. Smith obtained the money though his false representations—he cashed the checks made out to him and then made additional false representations to obtain more money by Plaintiffs. It would be inequitable for Smith to keep Plaintiffs' money, based on this Court's conclusion

---

fraud would not necessarily require a judgment of nondischargeability because fraud under state law could be dependent on "reckless disregard for the truth" and not "intent to deceive").
[59] *Jones v. Culver*, 50 Kan. App. 2d 386, 390, 329 P.3d 511, 514 (2014).

**18**

the money was obtained via Smith's false representations and intent to deceive. The Court additional concludes Plaintiffs have established unjust enrichment under Kansas law.

## IV. Conclusion

Plaintiffs' motion for summary judgment[60] is granted in part and denied in part, as more fully set out herein. Plaintiffs are entitled to summary judgment on their claims of fraud and unjust enrichment, with damages liquidated in the amount of $314,693.14. Plaintiffs have carried their burden of proof to show the debt owed to them of $314,693.14 should be excluded from discharge under § 523(a)(2)(A), and their motion for summary judgment is granted as to that claim. Plaintiffs' motion for summary judgment as to their claim under § 523(a)(6), however, is denied.

The Court concludes Plaintiffs' claim of $314,693.14 is nondischargeable under § 523(a)(2)(A).

**It is so Ordered.**

### 

---

[60] Doc. 24.